THE BOARD OF STREET COMMISSIONERS OF HAGERSTOWN *vs.* FRANK K. WILLIAMS.

*Officers—Policemen Appointed Subject to Removal For Cause—Notice of Charges—Appeal—Authentication of Evidence.*

The Act of 1898, ch. 192, directed the Board of Street Commissioners of Hagerstown to appoint "regular policemen not exceeding ten to serve under such regulations and for such compensation as they may direct * * * and said policemen shall be subject to removal for cause." *Held*, that policemen appointed under the Act are entitled to hold their offices so long as they are competent and efficient and that the power of the board to remove can only be exercised for some cause affecting the ability or fitness of an officer to perform his duties and after notice of charges against him and an opportunity to be heard.

When upon appeal from an order directing the issue of a writ of *mandamus* the record contains certain evidence, but there was no bill of exceptions, or agreement of counsel or certificate of the trial Judge that such evidence was produced at the trial, it will not be considered by this Court.

Appeal from the Circuit Court for Washington County (STAKE J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*J. Augustine Mason,* for the appellant.

Whether or not a police officer is inefficient is certainly a matter of judgment or opinion. *State* v. *Board, etc.,* 26 Ohio State Rep. 24; *Trainor* v. *Board, etc.,* 89 Mich. 162; 15 L. R. A. 95–101. The commissioners who come in contact with the policemen, and have them under their control and observation are undoubtedly the best persons to be the judges of this, and in determining it certainly exercise a discretion. The Legislature obviously intended to leave to the commissioners this freedom, and not to fetter them. It recognized that in dealing with a man on the police force, they should not be hampered in removing him when they saw and knew him to be unfit for such service.

· Conceding that some authorities may be found which hold that the undefined words " for cause " place a particular limitation upon the power of removal, yet the great weight of them is to the effect that the appointing power is yet, nevertheless, the sole judge of the cause and the sufficiency of the evidence to support the same.   So, if the appointing power is to determine the cause and the sufficiency of the evidence, it would in reason appear, that it is exercising a purely discretionary power in removal.   And whilst some authorities may be found deciding that these undefined and indefinite words restrict the power of removal to a formal method when applied to a fixed term, and require notice, etc., it has been the rarest exception for the Courts to so hold when the term is not fixed.   The Maryland cases attach great importance to the fixity, or not, of the term.   And this would appear to be a controlling factor in determining the method of procedure in exercising the power of removal.   *State* v. *Burks*, 8 Wash. Rep. 412; *State, &c.*, v. *Board of Pol. Coms.*, 88 Mo. 144; *People* v. *Martin*, 24 L. R. A. 201; *State* v. *Doherty*, 25 La. Ann. 119; 13 Am. Rep. 131; *People* v. *Mays*, 117 Ill. 257; *State* v. *Johnson*, 30 Fla. 433; 18 L. R. A. 410; *Hoboken* v. *Gear*, 27 N. J. L. 285; *People* v. *Robb*, 126 N. Y. 180.   The case at bar is within the ruling in *State* v. *Register*, 59 Md. 283.

*M. L. Keedy*, for the appellee.

The office and position of a " regular policeman " is not a temporary one.   It may be said to be co-extensive, in point of duration, with the life of the corporation itself.   The appointees to the office, under the charter, became appointees *during good behavior*, subject to be terminated by " removal for cause."   A " removal for cause " is not a holding at " pleasure," and a " removal for cause " can only be exercised after notice and hearing.   19 *Amer. & Eng. En. of Law*, 562 ; *Dill on Mun. Corp.*, secs. 250, &c.; *Dullam* v. *Wilson*, 19 N. W. Rep. 112 ; *Field* v. *Com.*, 32 Pa. St. 480 ; *Andrews* v. *Police Board of Biddeford*, 94 Me. 68 ; *State* v. *Police Board*, 30 At. Rep. 758 ; *Pratt* v. *Swan*, 52 Pac. Rep. 1092 ; *Ramshay in re*,

83 Eng. Com. Law Rep. 174 ; *Queen* v. *Governors, &c.*, 8 Ad. & El. 682.

We contend, as the charter provides—" The said policemen shall serve under such regulations and for such compensation as the board may direct," and as the board adopted regulation for the government of the police force of Hagerstown, and provided a " *citation and hearing* " for a reported violation of said regulations, that the proceeding therein provided in Regulation Ninth, was as binding upon the Board of Street Commissioners (so long as in force) as if the Legislature itself had directed such a procedure to remove. Or, in other words, that it was and is the law of this case. Sec 1, of Art. 26 of the Code says : " The Judges * * may make such rules and orders from time to time as they may think fit." In *Dunbar* v. *Conway*, 11 G. & J. 97, it is said : " This Court has always regarded a legitimate rule of Court as prescribing a law to the Court." In *Quynn* v. *Carroll*, 22 Md. 296, it is said : " It is not within the discretionary power of a Court to disregard its own standing rule." *Carroll* v. *Barber*, 7 H. & J. 329 ; *Main* v. *Lynch*, 54 Md. 668.

McSHERRY, C. J., delivered the opinion of the Court.

By the *Act of 1898, ch. 192*, relating to Hagerstown it is among other things provided that the Board of Street Commissioners "shall appoint regular policemen, not exceeding ten, to serve under such regulations and for such compensation as they (the Street Commissioners) may direct, such compensation not, however, to exceed forty dollars per month, and said policemen shall be subject to removal for cause." *Sec. 192* was amended in *1900, by ch. 391*, of the Acts of that session, but not in such a way as to affect the question involved in this controversy. In February, 1900, and therefore whilst the Act of 1898 quoted from above was in force, the appellee, Williams, was appointed by the Board of Street Commissioners then in authority, a regular policeman and he duly qualified and entered upon the discharge of his duties. He continued to perform those duties until April the sixteenth, nineteen hun-

dred and two, when he was discharged by the Street Commissioners without notice that any charge had been preferred against him and without an opportunity to be heard in his own defense.    He then made application to the Circuit Court for Washington County for a writ of *mandamus* requiring the Street Commissioners to restore him to his office.    In the answer of the respondents it is admitted that the action of the majority of the board in discharging the appellee was taken " without notice or citation to the said petitioner to appear before said board at said particular meeting " (that is, the meeting of April the sixteenth), " and without notice to the said petitioner that any charge had been made against him for failure or neglect of duty or official misconduct, or any notice to the said petitioner of the action contemplated."    In their answer the respondents further insisted that they were entrusted by the statute with the sole power to determine whether the appellee should remain on the police force ; that their judgment in the matter was final and conclusive ; and that inasmuch as they had exercised their discretion, had removed the appellee and had appointed another person in his place, the Court was without jurisdiction to review their action.    To the answer, only parts of which have been cited, the appellee filed fifteen pleas and joinders of issue.    Several of the pleas were demurred to, but as the case now stands it will not be necessary to allude to any but the fifteenth plea.    By that plea it was averred that under the section heretofore quoted from the statute, and under the rules and regulations adopted by the Street Commissioners, the appellee was entitled to have due and proper notice of any charge or charges made against him and that he was entitled to an opportunity to be heard in his own defense, but that he did not have either notice or an opportunity to be heard.    The demurrer to that plea raises the only question before us.    And that is the only question before us, because though the record contains considerable evidence on the issues of fact there is no bill of exceptions, no agreement of counsel or no certificate of the trial Judge from which this Court can know or be apprised that what is in the record

was, in fact, the evidence considered by the Court below. Without some such authentication of the testimony we are not at liberty to consider it. *Davis* v. *O'Berry*, 93 Md. 751. In *Creager* v. *Hooper*, 83 Md. 501, the question decided arose on a demurrer. In *Manger* v. *Board of Examiners, &c.*, 90 Md. 672, there was a bill of exceptions.

From the order directing the writ of *mandamus* to issue the Street Commissioners have appealed.

The single question for decision on that part of the record which is properly before us arises on the demurrer to the fifteenth plea; and that question is, was the appellee, under the terms of the *Act of 1898* heretofore transcribed, entitled to notice that charges had been preferred against him and further entitled to a hearing before being removed?

There have been many cases decided by this Court on the subject of official tenures and relating to the right of removal from office; but the precise situation here presented does not seem to have arisen heretofore. In *State, ex rel. O'Neill* v. *Register et al.*, 59 Md. 283, the statute under which the relator was appointed provided that the appointees of the Fire Department of Baltimore City "shall be of good character and * * * * shall be appointed by the Fire Commissioners and shall be entitled to retain their respective positions for such time as they evince willingness and capacity to discharge the duties pertaining thereto efficiently, harmoniously with their associates, and satisfactorily to the Fire Commissioners." The relator having been discharged from his position of foreman of an engine company applied to the Court of Common Pleas for a writ of *mandamus* to require the Fire Commissioners to restore him to his former place. The writ was refused and this Court held that under the statute just quoted "the Fire Commissioners were solely invested with the power of determining whether their appointees were persons of good character as by law required to be, whether they were efficient in the service, and whether they evinced proper willingness to discharge their duty 'harmoniously with their associates,' and the judgment and discretion exercised in the

matter by the Fire Commissioners are not subject to the revision of another tribunal." It was further held that when the power of removal from office vests by statute in the discretion of any person, or body of persons, or depends upon the exercise of personal judgment as to whether the cause for removal be sufficiently good, *mandamus* will not lie. In *Miles et al.* v. *Stevenson*, 80 Md. 358, it was held where the term was for a definite and prescribed period and where the causes justifying a removal were specified, that a removal for some other and different cause was illegal; and that an incumbent could not be discharged even for the designated causes unless he had notice of the charge against him and an opportunity to be heard. In *Townsend* v. *Kurtz*, 83 Md. 331, it was decided that when an office is created by statute and it is provided that the incumbent shall hold the same for a fixed term unless sooner removed by the appointing power, such general power to remove carries with it the right to remove an incumbent before the expiration of his term without notice and without charges of misconduct. In *Field* v. *Malster*, 88 Md. 691, it was ruled that an officer appointed for a fixed and definite term could not be summarily removed without cause unless there is some express provision of law authorizing such a removal during the term.

In the case at bar we have a statute authorizing the appointment of *regular* policemen who *"shall be subject to removal for cause;"* and the questions are, *first*, what is the extent or limit of their tenure when appointed; and, *secondly*, for what cause may they be removed? With these questions solved the legal principles already alluded to will be easily applied.

The statute fixes no other term or tenure than is included in the provision that the appointees shall be "regular policemen" who "shall be subject to removal for cause." Looking to the nature of the service to be performed—that is, to the preservation of the tranquility, the good order and the security of the community—it may well be concluded that the Legislature intended these conservators of the peace, described

as *regular*, therefore, constant, fixed and not temporary police-
men, to serve, when appointed, until removed *for cause*. Fixity
of tenure in such positions is the tendency now of an enlight-
ened public opinion. As no definite number of years was
named for these *regular* policemen to hold and as no other
contingency was designated for the termination of their service
than a removal for cause, it necessarily follows that when once
appointed they are entitled to continue in office until removed
therefrom *for cause*. A removal for cause is, therefore, the
only limitation fixed by the statute to their tenure. This be-
ing so an appointment is in legal effect an appointment during
good behavior, or so long as the appointee is competent to
discharge the duties of the office or efficient in the performance
of them. The term is not, therefore, indefinite, nor is it de-
terminable at the mere will of the appointing power. True
the term may be put an end to, but when terminated it must
be terminated for cause. An Act of the Legislature of Maine
established a Board of Police Commissioners in Biddeford with
"authority to appoint, established and organize the police force
of said city. including the Marshal and deputy Marshal, *and
to remove the same for cause, &c.*" The Board of Police Com-
missioners removed one Andrews from the force. No charge
or complaint had been made against him and no notice was
given to him of the pendency of any proceeding for his dis-
charge until after he was actually removed. Upon a petition
for a writ of *certiorari* praying that the Police Commissioners
be required to certify up to the Supreme Judicial Court their
records respecting the removal of the petitioner, so that so
much thereof as was illegal might be quashed, it was held
that : " The manifest purpose of the Act was to create a police
force not subject to change from the result of recurring elec-
tions, but with a tenure to be cut short only for cause. That
means cause affecting the individual to be removed  *  *  *  *
The board was only authorized to remove for cause, and such
removal is a judicial act to be made only upon notice and hear-
ing." *Andrews* v. *Police Board, &c.*, 94 Me. 68 (46 Atl. 801).

As the tenure of the policemen appointed under the charter

of Hagerstown can be cut short only *"for cause,"* it is clear that it cannot be terminated without cause.   The phrase " for cause " does not mean the arbitrary will of the appointing power, for that might be the outgrowth of mere whim, caprice, prejudice or passion, which would, in reality, be no cause at all.   But the phrase " for cause " must mean some cause affecting or concerning the ability or fitness of the incumbent to perform the duty imposed upon him.   "The cause must be one affecting the officer's capacity or fitness for the office." 21 *Am. & Eng. Ency. L.* (2nd ed.) 850.   Hence it must be inefficiency, incompetency or other kindred disqualification. This being the case the appointee does not hold at the will of the appointing power, and the doctrine laid down in *State ex rel., O'Neill* v. *Register,* and in *Townsend* v. *Kurtz, supra,* does not apply.   When the right to remove can be exercised only for specific cause, or for cause generally, the appointing power cannot arbitrarily remove the officer, and where the removal is to be had *for cause* the power cannot be exercised until the officer has been duly notified and an opportunity has been given him to be heard in his own defense; 19 *Am. & Eng. Ency. L.* (1st ed.) 562G and note 5, or, as tersely put by the Supreme Court of Missouri : " Where the appointment is during good behavior, or where the removal must be for cause, the power of removal can only be exercised when charges are made against the accused, and after notice, with a reasonable opportunity to be heard before the officer or body having the power to remove.   *Gaskin's case,* 8 T. R. 209; *Field* v. *Com.,* 32 Pa. St. 478; *State* v. *Bryce,* 7 Ohio St. 82; *Dill. Mun. Corp.,* 3rd ed., secs. 250–254;" *State ex rel., Dennison* v. *City Council St. Louis,* 6 West. Rep. 464.

Holding as we do that an appointment which can be terminated only for cause is not an appointment at will, but is, on the contrary, for a definite term, it follows on the authority of *Miles* v. *Stevenson,* and *Field* v. *Malster, supra,* without reference to the other cases just above cited, that the appellee was entitled to notice of the charges preferred against him and to an opportunity to be heard.   As no such notice or opportunity

was given, the removal of Williams was unauthorized and he is entitled to be restored to his office.

But it has been insisted that the appellee was really discharged for inefficiency, and that inasmuch as for the same cause he could even after being restored to his office be again removed upon notice and hearing, the writ of *mandamus* ought not to be issued, because if issued it would be in the end unavailing and nugatory. The case is not before us on the merits. We have considered only the questions raised by the demurrer, and we have no right, for the reasons heretofore given, to examine the evidence set forth in the record. We cannot, therefore, know for what reason Williams was removed. If he was in fact inefficient he should still have had an opportunity to be heard. If he be inefficient he can be removed upon proper proceedings being instituted wherein he may have an opportunity to be heard in his own defense on the charges preferred against him. The order appealed from will, for the reasons herein assigned, be affirmed, but without prejudice to the right of the Street Commissioners to proceed in a proper way upon charges preferred and a hearing had to exercise the power of removal for cause.

*Order affirmed with costs.*