# DAVID H. DARRIN ET AL. vs. GEORGE HOFF ET AL.

*Appeal—Testimony in Record Not Authenticated—Election of Directors of a Corporation at Annual Meeting by Members Present Not Holding a Majority of Stock—By-Laws of Corporations Created Under Code.*

When the record on an appeal contains certain testimony which is not authenticated by the trial Judge, or set forth in a bill of exceptions, and there is no agreement of counsel that it is the evidence which was actually adduced before the Judge, such testimony cannot be considered in this Court. Consequently the rulings of the trial Judge on the evidence will be presumed to be correct.

Code, Art. 23, sec. 57, provides that the affairs of corporations created under that article shall be managed by directors, etc., to be annually elected after notice and that the election shall "be made by such of the stockholders * * * who shall attend for that purpose either in person or by attorney." The share of stock is made by the Code the voting unit and not the shareholder, but it is not provided that the memberes who attend must represent any particular number of shares, except in two specially designated instances. *Held*, that the stockholders who attend an annual meeting for the election of directors are entitled to make the election whether they hold a majority of the stock or not, and that therefore at an annual meeting at which only 952 shares out of a total of 3,000 shares were represented, an election of directors made by the shareholders present is valid.

A by-law of a corporation created under the Code declared that a majority of the entire stock shall constitute a quorum, each share of which shall be entitled to one vote. The Code empowers such corporations to make by-laws not inconsistent with law. *Held*, that this by-law is inoperative as to the election of directors because in conflict with Code, Art. 23, sec. 57, which provides that an election for directors shall be held by the stockholders who may attend the annual meeting, without prescribing that they must represent a majority of the shares.

Code, Art. 23, sec. 55, provides that the by-laws of each corporation, unless confirmed at a general meeting, shall only have force until the next annual meeting and in default of confirmation shall cease to be in force. *Held*, that a by-law of a corporation adopted by the directors in September, 1888, and not confirmed at a meeting of the stockholders expired after the annual meeting in January, 1889.

Appeal from the Court of Common Pleas (DOBLER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ. .

*T. Rowland Slingluff* (with whom were *German H. H. Emory* and *Slingluff & Slingluff* on the brief), for the appellants.

*Randolph Barton, Jr.,* for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

This is an appeal from the Court of Common Pleas of Baltimore City. David D. Darrin and others filed a petition in that Court against George Hoff and others, praying that a writ of *mandamus* might be issued requiring Hoff and the other respondents to surrender the directorate of the Automatic Switch Company of Baltimore to the relators who claim that they were duly chosen directors at a stockholders meeting held on January 13th, 1904. It was further prayed in the petition that some of the respondents might be commanded to vacate the offices of President, Treasurer and Secretary of the Automatic Switch Company which positions it was alleged were unlawfully held by them, and it was asked that they be compelled to surrender the same to the relators who assert that they, and not the respondents, are entitled thereto. It was further prayed that the respondents be required to allow the relators to take possession of the books, office, papers, records and other effects of the corporation, and to control and manage its affairs, subject to the provisions of its charter and by-laws, until such time as the successors of the relators may be properly elected. The answer of the respondents contains fifteen paragraphs. It admits that the statements contained in the first, second, third, fifth and thirteenth paragraphs of the petition are true. The relators joined issue upon the fourth, sixth, seventh, eighth, ninth and tenth paragraphs of the answer. To the eleventh and part of the twelfth, to the fourteenth and fifteenth paragraphs of the answer demurrers were interposed and to other portions of the twelfth paragraph

replications were filed.   On the 15th day of March, 1904, the case was heard upon the demurrers to the answer and upon the questions of fact raised by the replications to portions of the answer, and evidence having been taken the Court passed an order wherein it was adjudged, first, that according to the evidence offered, the election of the 13th of January, 1904, for the selection of directors of the Automatic Switch Company was held by ballot to all intents and purposes; secondly, that the appointment of tellers at the election of January the 13th, was legally and properly made; thirdly, that as a by-law of the Automatic Switch Company required a majority of all the shares of stock of the corporation to be represented at the annual meeting of the stockholders for the election of directors, and as that by-law was, in the opinion of the Court, valid under the provisions of sec. 57 of Art. 23 of the Code, and as there was not a majority of shares represented at that meeting, the meeting was not a legal one and the election then held was null and void and of no effect, and that the subsequent meeting of the directors, chosen at that annual meeting of the stockholders, was unauthorized.   The demurrers to the answer were overruled and the petition for a writ of *mandamus* was denied because, if the relators were not legally chosen directors they were not entitled to the relief they sought.   The relators thereupon took the pending appeal.

Certain testimony is contained in the record, but there is no authentication of it by the Judge who heard the case and there is no agreement of counsel that it is the evidence which was in reality adduced before the trial Court.   In the case of *Street Coms.* v. *Williams*, 96 Md. 232, which was an application for a *mandamus*, precisely the same situation was presented.   In that case the appellee filed fifteen pleas and joinders of issue to the answer of the respondents.   Several of the pleas were demurred to and evidence was taken on the issues of fact. When the record came into this Court it was held that the only question open for review was the one raised by the demurrer to the plea, and we said:   "And that is the only question before us because though the record contains considerable

evidence on the issues of fact there is no bill of exceptions, no agreement of counsel or no certificate of the trial Judge from which this Court can know or be apprised that what is in the record was in fact the evidence considered by the Court below. Without some such authentication of the testimony we are not at liberty to consider it. *Davis* v. *O'Berry*, 93 Md. 751. In *Creager* v. *Hooper*, 83 Md. 501, the question decided arose on a demurrer. In *Manger* v. *Board of Examiners*, 90 Md. 672, there was a bill of exceptions." In the last-named case all the evidence was fully set out in the bill of exceptions and was consequently properly before this Court.

Laying out of view the testimony contained in the record because not authenticated in one of the modes pointed out in *Williams'* case, the only questions which arise are those presented by the demurrer to the twelfth paragraph of the answer and they are, first, whether the election of directors on the 13th of January, 1904, was legal; secondly, whether the by-law which will be alluded to presently, is valid, and thirdly, whether the election of directors at the meeting named was by ballot.

The Automatic Switch Company of Baltimore is a corporation of the State of Maryland formed under the general corporation laws contained in the Code of Public General Laws. It has a capital stock of three thousand shares of the par value of twenty dollars each. By the averments of the petition and by the admissions of the answer, it appears that David H. Darrin, as president and owner of the D. H. Darrin Company, a corporation of the State of New York, controls 948 shares of the capital stock of the Switch Company; that in addition thereto, he owns one share of the Switch Company stock individually: That a certain Frederick G. Townsend owns one share and that T. Roland Slingluff held a proxy for one other share. It further appears that George H. Whittingham is the owner of 1490 shares; that Hollis J. Parkes owns one share, Thomas U. Dudley owns 16 shares, The Pikesville Dairy Company owns four shares and that 538 shares were claimed by Darrin as his property, but that this

claim was disputed.  Under sec. 1 of Art. 2 of the by-laws
of the Switch Company, it is provided that "the annual meet-
ing of the stockholders shall be held in the city of Baltimore
at the office of the company, on the second Wednesday in
January of each year, between the hours of 1 and 1.30 P. M.,
due notice of which shall be mailed to the addresses of each
stockholder."   On the second of January, the Secretary of
the company mailed to the stockholders notices of the meet-
ing to be held on the second Wednesday of January, 1904, as
required by sec. 5 of Art. 2 of the by-laws.   Prior to the
meeting on the 13th of January, Hollis J. Parkes, Thomas
Dudley and the Pikesville Dairy Company were restrained by
injunction from attending that meeting and voting thereat the
shares of stock standing upon the books of the company in
their respective names.   It seems that Whittingham, who
owned 1490 shares of the stock, as already stated, discover-
ing that the injunctions just mentioned had been issued to re-
strain the owners of the twenty-one shares of stock owned by
Parkes, Dudley and the Pikesville Dairy Company from vot-
ing, determined that it would be better to postpone the
annual meeting until the right of the holders of the above
mentioned twenty-one shares to vote, had been passed upon
and decided by the Court.   Notwithstanding the fact that
Whittingham had come to Baltimore on the 13th, to attend
the meeting on that day, and notwithstanding the further fact
that he owned and controlled 1490 shares of the stock, he
decided not to be present at the meeting and he accordingly
returned to New York with a view of defeating the holding of
the meeting on that day, and for the purpose of preserving
the situation which then existed in the management of the
corporation.   When the hour named in the by-law for the
meeting to convene had arrived, there were represented in
person and by proxy only 952 of the 3000 shares of capital
stock.   The holders of the 952 shares thereupon proceeded
to organize the stockholders' meeting.   A chairman and sec-
retary were chosen and a vote was taken upon the election
of directors and the result as announced, declared the relators

in this case to have been duly elected directors for the ensu-
ing year by the votes representing the 952 shares which were
present. Immediately after the adjournment of the stock-
holders' meeting the five directors so elected by the votes of
the 952 shares of stock, organized by electing a president and
other officers of the corporation. Thereupon demand was
made upon the former officers for the possession of the books
and papers of the corporation. This demand was refused and
then the application now before us for a *mandamus* was filed
in the Court of Common Pleas.

It being established by the allegations of the petition, the
admissions of the answer and the concessions of the demurrer
that the election of directors by the stockholders on January
13th, was participated in by only 952 of the whole 3,000
shares, it is insisted that the entire proceeding was void and
that no election was legally held. A great deal of the discus-
sion at the bar was addressed to a consideration of the propo-
sition that at the common law the rule in joint stock compa-
nies is that the majority of those stockholders who attend a
properly called meeting, provided there be at least two pres-
ent, can control the meeting and elect directors. Whilst this
proposition was conceded, in a general way, to have been the
doctrine of the common law, it was, in behalf of the appellees,
insisted, that in modern business corporations the rule was no
longer applicable, because the voting unit is not now the indi-
vidual but the share of stock, and that, therefore, a majority
in shares is necessary to constitute a quorum for the election
of directors. Interesting as this subject is, we do not deem it
necessary to discuss it in the pending case, because, whatever
the rule at the common law may have been, we are controlled
entirely at the present day in this State, by the provisions of
the statutes in force in Maryland. By sec. 57 of Art. 23 of
the Code it is provided that, "the stock, if any, property and
concerns of any corporation for whose creation provision is
made in this Article, shall be managed by such number of
trustees, directors or managers as its by-laws or charter shall
prescribe   *   *   *   who shall, except the first year, be an-

nually elected by the stockholders where there are such, or by the shareholders or members, where there are no stockholders, at such meeting, time and place, and after such notice as shall be directed by the by-laws of the corporation *and the election shall*, except in cases otherwise provided herein, *be made by such of the stockholders, shareholders or members, as the case may be, who shall attend for that purpose, either in person or by proxy.*" By sec. 58 of the same Article it is declared that, "in all corporations heretofore formed or hereafter to be formed under the general laws of this State or under any special law having a capital stock and in which there are stockholders, all elections shall be by ballot and each stockholder shall be entitled to as many votes as he owns shares of stock in said corporation, and the persons receiving the *greatest number of votes* shall be trustees, managers and directors." Under sec. 57, it is clear that, except in cases otherwise provided for in the general corporation law, elections for directors shall be held by *such* of the stockholders *as shall attend for that purpose*, either in person or by proxy. There is no requirement that a majority of the shares of stock shall be represented at such a meeting, and though by the 58th section the share of stock is made the voting unit instead of the shareholder, it is nowhere provided that the members who do attend must represent any particular number of shares. If it had been the intention of the Legislature to provide that the election of directors in corporations formed under Art. 23 of the Code could only be held when a majority of the stock was represented in person or by proxy, at an annual meeting, it would not only have been easy for the Legislature to so declare, but the General Assembly would not have enacted, as it has done, the specific direction that the election should be held by *such* stockholders as *should attend* for that purpose, without reference to the number of shares that such attending stockholders might have.

There are two instances specified in the general corporation law wherein a different rule is applied; and these are, first, sec. 144 of Art. 23 relating to Mining Companies, where it

is enacted that "no corporation formed for the purpose of mining shall hold more than" a certain number of acres of land "nor shall have capital stock exceeding three million of dollars" and where it is declared "that the presence in person or by proxy of a *majority in interest* of the stockholders *shall be necessary* to *form a quorum* for business at any meeting of the stockholders or members." Secondly: Secs. 6 and 7 of Art. 23 of the Code make provision for calling general meetings of the stockholders of any corporation. By section 6, general meetings of the stockholders may be convened at any time upon the requirement of stockholders entitled to *vote a majority of the stock* of the corporation, and under section 7, at any general meeting of the stockholders called pursuant to section 6 any president, director or directors may *by a vote of a majority in interest of the whole number of stockholders*, be removed from office and another or others be appointed in the place of the person or persons so removed, to serve for the remainder of his or their term. Apart from these two instances, there is no other section or enactment in Article 23 or elsewhere in the Code, modifying or changing the provision of section 57 as respects the election of directors by *such* of the stockholders *as may attend* for that purpose, at an annual meeting. Taking into consideration the specific provision of section 57 and the instances where a contrary rule is prescribed by secs. 6 and 7 and 144, it is obvious, we think, that the stockholders who attend a meeting for the election of directors are entitled to perform that act whether those so attending hold a majority of the stock or not. If it be said, that as a result of this a small minority might control the affairs of the corporation by chosing the managing board, it may be retorted, that it is in the power of those holding the majority of stock to prevent such a result by simply attending the meeting. If, on the other hand, it were necessary that a majority of the stock should be represented at such a meeting it would be easy for those holding such majority to defeat an election by remaining away. So after all, it is not a question as to consequences, but simply one depending upon

the interpretation to be put upon section 57.  We hold then, solely in accordance with the terms of the statute, that though the stockholders who assembled on the 13th of January, represented less than one-third of the whole stock subscribed and issued, they were entitled to hold the election, unless the by-law, to which we will now allude, validly prescribed a different rule.

The last clause in sec. 1 Art. 2 of the by-laws is in these words: "*A majority of the entire stock shall constitute a quorum*, each share of which shall be entitled to one vote either in person or by proxy." The Judge below held that this by-law was controlling and inasmuch as a majority of the entire stock was not represented, that there was no quorum and consequently no valid election.  By sec. 55 of Article 23, corporations are empowered to make by-laws, not inconsistent with law, for the management of their property, the regulation of their affairs, and for other purposes which need not now be mentioned.  The section then goes on to declare: "But every such by-law and every repeal, amendment or re-enactment thereof, unless in the meantime confirmed at a general meeting of the company duly called for that purpose, shall only have force until the next annual meeting of the company, and in default of confirmation thereof shall from that time only cease to have force." There are two reasons why this by-law requiring a majority of the stock to constitute a quorum cannot prevail. First, because it is repugnant to sec. 57 of Art. 23, and also to sec. 55, which authorizes the adoption of by-laws, but expressly prohibits them from being passed if inconsistent with law.  Section 57 provides that an election of directors shall be held by such of the stockholders as may attend for that purpose, without reference to the number of shares they own. As the by-law undertakes to prescribe that a quorum must consist of a majority of the stock for the election of officers, it is obviously in conflict with the statutory provision and therefore is inoperative.  *10 Cyc. 355.*  Secondly: But this by-law, we are informed by the second paragraph of the petition for *mandamus*, the truth of which is admitted by the

answer, was adopted on the 5th day of September, 1888, at a called meeting of the directors of the Automatic Switch Company. Unless the constitution of the corporation or its governing statute has vested the power of making by-laws in some particular board or body of the corporation, it can be exercised only by the constituent body, and then only by the most numerous body or constituency. *10 Cyc. 353, and cases in notes 68 and 69.* Now under the provisions of section 55, which we have just quoted, every by-law unless confirmed at a general meeting of the company duly called for that purpose shall only have force until the next annual meeting of the company. · It is nowhere averred that this by-law ever was confirmed by a meeting of the stockholders, and consequently it expired and ceased to have force after the annual meeting of the stockholders in January, 1889.

As the by-law could not alter or abridge the terms of the statute law, and as even had the by-law, when first adopted, been valid, it expired under sec. 55, because it never was ratified by the corporation; it follows that it is not effective or in force. Not being in force it does not prescribe a different method for electing directors than the one enacted by sec. 57 of Art. 23 of the Code; and as the election of January 13th, was conducted pursuant to that section it was regular and, legal.

We are now brought to the third and last question, which requires but little comment. In the order signed by the Judge of the Court of Common Pleas it is declared that from the evidence offered, the Court found the election of directors on January 13th, 1904, was had by ballot to all intents and purposes. Since, for the reasons given in an earlier part of this opinion, we are precluded from looking to the evidence contained in the record, we cannot review that conclusion of the trial Court, and we must assume, in the absence of anything to show the contrary, that this finding is correct.

These views dispose of all the questions that are properly before us. It will be seen that we do not concur with the Judge below in the result he reached with respect to the valid-

ity of the by-law; and for the reasons we have given we must reverse his order in this behalf and also his finding that the election of January 13th, was illegal, because there was not a majority of the stock represented at the meeting; and the record will be remanded that further proceedings may be had in accordance with the opinion of this Court.    In other respects the order will be affirmed.

> *Affirmed in part and reversed in part,*
> *with costs above and below, and*
> *cause remanded.*

(Decided June 9th, 1904.)