CLINTON B. LOHSEN, PLAINTIFF-APPELLANT, v. BOROUGH OF KEANSBURG, A MUNICIPAL CORPORATION OF NEW JERSEY, AND RALPH O. WILLIAMS, DEFEND-ANTS-RESPONDENTS.

Argued March 20, 1950—Decided April 24, 1950.

*Mr. Lawrence A. Carton, Jr.,* argued the cause for appellant (*Messrs. Roberts, Pillsbury, Carlon & Sorenson,* attorneys).

*Mr. William R. Blair, Jr.,* argued the cause for respondents (*Messrs. Parsons, Labrecque, Canzona & Combs,* attorneys).

The opinion of the court was delivered by

CASE, J. Clinton B. Lohsen, formerly and claiming still
to be municipal manager of the Borough of Keansburg, in-
stituted this suit in the Superior Court, Law Division, by
filing a complaint entitled "Complaint in Lieu of *Certiorari*
and *Quo Warranto*" attacking (1) a resolution of the munici-
pal council of the borough passed on May 24, 1949, by the
affirmative vote of two of the three members, purporting to
appoint Ralph O. Williams as acting municipal manager
and (2) a direction from the council calling upon Lohsen
to turn in the records, books and property of the borough.
The action of the council in effect removed Lohsen from office,
although there had been no charges, no hearing and no reso-
lution of direct removal. Defendants answered. Affidavits
were filed and a stipulation was made at pretrial conference,
followed by cross motions for summary judgment. The court
concluded that the successive appointments under which plain-
tiff served contained provisions inconsistent with tenure, that
plaintiff in accepting the appointments was governed by those
provisions and that he thereby waived whatever claim of
tenure he might otherwise have had under either *R. S.* 40:82–3
or *R. S.* 40:47–60. The motion by plaintiff for summary judg-
ment was denied and the like motion by defendants was
granted. Plaintiff appeals.

Plaintiff was originally appointed on May 3, 1927. The
resolution of appointment fixed an annual salary but made
no mention of term. There were subsequent resolutions: one,
passed May 28, 1929, making an appointment "to hold office
during the pleasure of the municipal council;" another, passed
May 23, 1933, "to hold office until December 31, 1933;" others,
passed respectively on May 25, 1937, May 27, 1941, and May
22, 1945, appointed plaintiff "to serve at the pleasure of the
municipal council." Following each appointment plaintiff
took and filed an oath of office. Apparently he served from
December 31, 1933, to May 25, 1937, without formal appoint-
ment. From his assumption of office in May, 1927, until
May 24, 1949, he rendered uninterrupted service and was paid

the prescribed salary. At the municipal election on May 10, 1949, a ticket placed in opposition to the previous administration succeeded in electing two of the three borough councilmen. On May 24, 1949, the new council, as stated above, appointed Ralph O. Williams acting municipal manager. Williams was sworn forthwith and assumed the duties of the office. On the face of the statute, *infra,* it seems, *prima facie,* that plaintiff has acquired tenure. We therefore take up defendants' points, *seriatim,* arguing *contra.*

Defendants first argue that the term of office of a municipal manager cannot extend beyond the term of the municipal council appointing him. That has no legal force unless to it be appended the proviso that the statute is not otherwise; and with the inclusion of that hypothesis the point, in our opinion, falls.

The municipal manager form of government was put on the statute books by *ch.* 113, *P. L.* 1923. It became effective as to any municipality only when adopted by a referendum vote. The Borough of Keansburg voted to adopt the legislation. Section 802 of the act required the municipal manager to become a resident of the municipality within three months after his appointment and to continue a resident throughout his period of service; it became *R. S.* 40:82–2 and has remained the same upon the issues here presented. Section 803 provided that the municipal manager should "hold office as long as he shall perform the duties of his office to the satisfaction of the municipal council. He may be removed at any time by a resolution signed by one more than a majority of the municipal council setting forth the reasons for such removal." Section 803 appeared in the Revision of 1937 as *R. S.* 40:82–3; it had already been amended by *ch.* 264, § 4, *P. L.* 1927, which provided that the resolution of removal might be signed by a majority of the municipal council instead of, as theretofore, by one more than a majority, and by *ch.* 159, *P. L.* 1936, which restored the requirement for signature by one more than a majority and added a provision that the removal should be "for cause, after hearing." The full read-

ing of *R. S.* 40:82–3, as it was at the times of plaintiff's last three appointments, was as follows (*ch.* 159, *P. L.* 1936) :

"The municipal manager shall hold office as long as he shall perform the duties of his office to the satisfaction of the municipal council. He may be removed at any time for cause, after hearing, by a resolution signed by one more than a majority of all the members of the municipal council setting forth the reasons for such removal."

The section was further amended by *ch.* 202, *P. L.* 1948, to read as follows:

"The municipal manager shall hold office as long as he shall perform the duties of his office to the satisfaction of the municipal council. During the first three consecutive calendar years of his employment he may be removed for or without cause and after said three-year period of employment he may be removed only for cause, after hearing, by a resolution signed by one more than a majority of all the members of the municipal council setting forth the reasons for such removal."

The amendment last stated was an integral part of the municipal manager statute at the time of the disputed municipal action.

The municipal council of the Borough of Keansburg serves in cycles of four years, and all members of council are elected at the same time for concurrent terms of four years each; and upon that fact respondents build their argument that since no specific term of office is fixed by the statute for manager the appointment may not extend beyond the four-year term of the appointing council. We are persuaded that the principle of municipal law thus invoked may not properly be used to defeat the foregoing statutory provisions. The statute provides not only for a four-year municipal cycle with the terms of all members of council expiring together (*R. S.* 40:75–2), but also, where the adopting municipality so votes (*R. S.* 40:84–9), for an election of one or more members each year (at least one member each year and more if the size of council so requires) for terms of three years each. Under the latter scheme there, is constant overlapping of the terms of members of council; there is no period of general shift. But

the same provisions regarding the service of manager applies to the latter as to the former. While the power of a municipal body to appoint officers may be, and has been, held in the absence of statutory authority to be limited to terms not greater than the interval of one year between the annual re-organizations of the appointing body, *Skladzien v. Board of Education of Bayonne*, 12 *N. J. Misc.* 602 (*Sup. Ct.* 1934); affirmed, 115 *N. J. L.* 203 (*E. & A.* 1935), nevertheless statutory direction is controlling. Our study of the municipal manager form of government law and its changing form under successive amendments convinces us that the 1936 amendment was intended to and did give tenure from the time of appointment subject to removal at any time for cause and upon hearing and that the 1948 amendment retained tenure but modified it by permitting removal with or without cause during the first three consecutive calendar years of the employment.

It is also argued that, the term of each council being four years, the tenure fixed by the 1948 amendment applies only to such a period as may remain, after the expiration of three years of the manager's appointment, until the expiration of the council's term of office. Were that argument to prevail, tenure would at most be for one year, and it would be as much less as the time of the appointment was later than the induction of the council into office. It would be a strange tenure that gave the incumbent that scant degree of security. And the contention fails to notice the status of a municipality where the recurring municipal elections come yearly. It is enough to say that we regard the argument as fallacious.

Thus, whether the 1936 amendment in effect at the time of the plaintiff's last appointment or the 1948 amendment in effect at the time of the disputed municipal action be considered as controlling is immaterial on the present issue. Plaintiff had acquired tenure under either statute.

It is next contended by the defendants that the plaintiff repeatedly and voluntarily accepted appointments for limited terms to the office of municipal manager and therefore is bound by the limitations of those appointments irrespective

of any tenure he might otherwise have had. It may not be said that plaintiff was appointed to limited terms in the sense that the appointments, except the one running from May 23, 1933, to December 31, 1933, were limited to specific periods. The appointments were to an office; that is clear from the wording of the statute and the municipal minutes; and to an office so important in the scale of municipal service that its name was made the official designation of that type of government—"the municipal manager form of government law" *R. S.* 40:79–1. By *ch.* 190, *P. L.* 1943, veterans in the office or employment of city engineer upon serving fifteen years, whether before or after the passage of the law, were given tenure; and by *ch.* 362, *P. L.* 1947, an assessor in cities operating under the aforesaid form of government with a population of over 45,000 were given tenure upon fifteen years of service. We do not undertake to construe or pass upon the validity of those statutes; we mention them as indications that the Legislature in passing them disregarded the fact that the appointments were effective "during the pleasure of the council." We have in mind that decisions (*e. g., Hardy v. Orange,* 61 *N. J. L.* 620 (*E. & A.* 1898), bearing upon tenure granted to those in the public service who have acquired a status such as that of a veteran, or of an exempt fireman, have held that the statutes conferring such tenure were passed solely for the benefit of the class of persons affected and that their provisions could be waived by the beneficiaries; and that other decisions (*e. g., Norwilz v. Board of Education,* 128 *N. J. L.* 13 (*Sup. Ct.* 1942)), have held that a person may interrupt the continuity of service required for tenure by voluntarily resigning and subsequently accepting a new appointment. But this case is clearly not in the latter class; and it is distinguishable from the former in that the tenure presently under discussion is not, in our view, solely for the benefit of the person affected. It attaches as an incident to and wholly because of the employment and not in recognition of or reward for an unconnected service. We find no analogy by which a municipal manager may be compared with an under sheriff, serving dur-

ing the pleasure of his principal, the sheriff, in whose name he acts. *Ackley v. Norcross,* 122 *N. J. L.* 569 (*Sup. Ct.* 1939); affirmed, 124 *N. J. L.* 133 (*E. & A.* 1939).

 The municipal manager scheme of government placed large powers in the hands of one man, the manager, selected by the governing body. It is imaginable that a person so placed would be subjected to pressure from interested sources and to retaliation upon refusal to comply. We may assume that the experiences thereunder were such that the character of tenure provided by the amended statute was found desirable toward the successful operation of the scheme, and that tenure was established not merely for the benefit of the incumbent but also in the public interest so that the office might be administered for the good of the community and, to an extent, beyond the reach of sinister influences and of mere partisan politics. The framing of an appointing resolution in language that contravenes the plain legislative direction, and the acceptance of the appointment and the rendering of service under it by the appointee, may not, having regard for the public interest, be given the legal effect of a waiver of the statute. Moreover, we find no purpose either in the appointing power or in the apointee to avoid the tenure statute. The recurring appointments were routine, evincing an intention to retain plaintiff in his office, done, so far as appears, without thought upon whether they were necessary or upon the effect thereof on tenure. It may be that council was not informed of plaintiff's status under the statute, and that plaintiff himself did not know of it until the occasion arose, but either or both of those conditions did not spell a waiver. We attribute no force, in nullification of the statute, to the words "to serve at the pleasure of the municipal council" used in the appointments; they are the equivalent of the statutory language to "hold office during the pleasure of the council" used in *R. S.* 40:81–11, and, therefore, are to be deemed consistent with the provision on tenure. Plaintiff, following the several resolutions of appointment, took the oath of office; but his continuity of service was unbroken, the

appointments upon which he entered were not for fixed terms, and the circumstances of the case, taken as a whole, do not weigh against the statute. We discover no facts to sustain a waiver.

Subject to the ultimate determination of the matter of residence, next discussed, plaintiff is entitled to the tenure set up in the Municipal Manager Act.

■ ■ The final contention of defendants is that the plaintiff automatically disqualified himself and vacated the office of municipal manager by taking up his residence outside the Borough of Keansburg. At the pretrial conference it was stated that the parties disagreed as to whether plaintiff was a resident at the time of the adoption of the resolution on May 24, 1949; the defendants contended that plaintiff had become a nonresident and the plaintiff contended that the question was irrelevant until made the subject of charges and proofs at a municipal hearing prior to removal from office. There were *ex parte* affidavits submitted on motions for judgment but there was no pertinent proof or stipulation in lieu of proof upon which a finding of fact dispositive of the cause could be made. The trial judge considered that the question did not call for a decision. We think that it does, both as to fact and law; this because of the statutory requirement that the municipal manager shall continue a resident throughout his period of service. On the other hand, plaintiff's contention that the question of residence must first be made the subject of charges and proof before the municipal council is not sound. Residence is not fundamentally a matter for charge of wrongdoing. It is involved with the statutory qualification for holding office. We may assume, for the purpose of the argument, that the action of the council in appointing Williams to be acting municipal manager was equivalent to a declaration of vacancy in the office of manager. The question arising on a review of that action is the legality of it, applying the law to the facts of the case, and that, under the old practice, would have been determined under a prerogative writ issued by the former Supreme Court, on facts pleaded or

proofs taken before or at the order of that court. Plaintiff has invoked the equivalent procedure provided by Art. VI, Sec. V, par. 4 of the 1947 Constitution. The Superior Court, Law Division, will determine the facts and the law.

We entertain doubt as to whether the statute, *R. S.* 40:82–6, which authorizes the appointment of a person to act during the absence or disability of the municipal manager is sufficiently broad to cover the appointment of such a temporary officer when, either because of removal or disqualification, there is no municipal manager. But as the question is not adequately argued, and does not touch upon the plaintiff's rights as we conceive them, we do not decide the question. Also, in view of our disposition of the issues, it becomes unnecessary to consider whether plaintiff's exempt fireman's certificate, issued to him under the state laws, *R. S.* 40:47–60, *supra,* is efficacious to apply tenure herein.

We conclude that plaintiff, on the submitted facts, was, under *R. S.* 40:82–3, protected from removal without charges and hearing, and we reverse the judgment below because it was founded on the opposite view. Whether or not the plaintiff had, under the statute, become disqualified for office depends upon the facts concerning residence and the effect of those facts upon plaintiff's legal *status.* The result is a reversal and a remanding for the further procedure indicated above.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD and BURLING—6.

*For affirmance*—None.